UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT JUSTISS, Individually and On Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>              v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,<br><br>                          Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Scott Justiss ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation:  (a) review and analysis of regulatory filings made by CannTrust Holdings Inc. ("CannTrust" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by CannTrust; and (c) review of other publicly available information concerning CannTrust.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired CannTrust securities between November 14, 2018 and July 5, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      CannTrust is purportedly a licensed producer and distributor of medical and recreational cannabis.

3.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (1) the Company was growing cannabis in its Pelham greenhouse while applications for regulatory approval were still pending; (2) the Company's Pelham greenhouse did not comply with certain regulations; (3) as a result, the Company was reasonably likely to face an inventory hold by Health Canada until the Pelham facility becomes compliant with applicable regulations; (4) as a result, the Company's customers would face shortages and would likely seek product from CannTrust's competitors; and (5) as a result of the foregoing, Defendants' positive statements

2

about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

4.      On July 8, 2019, the Company disclosed that Health Canada found that its greenhouse facility in Pelham, Ontario is non-compliant with certain regulations.  As a result, Health Canada placed a hold on 5,200 kilograms of dried cannabis harvested from the unlicensed rooms, along with an additional 7,500 kilograms voluntarily held by the Company, until the facility becomes compliant.

5.      On this news, the Company's share price fell $1.11, or more than 22%, to close at $3.83 per share on July 8, 2019, on unusually heavy trading volume.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff purchased CannTrust securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant CannTrust is incorporated under the laws of Ontario, Canada and its principal executive offices are located in Vaughan, Ontario, Canada.  CannTrust's common stock currently trades on the New York Stock Exchange ("NYSE") under the symbol "CTST." CannTrust's common stock traded on the OTC Markets Pink Open Market ("OTC") until February 25, 2019.

13.    Defendant Peter Aceto ("Aceto") was, at all relevant times, the Chief Executive Officer of the Company.

14.    Defendant Greg Guyatt ("Guyatt") was, at all relevant times, the Chief Financial Officer of the Company.

15.    Defendants Aceto and Guyatt, (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions

and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    CannTrust is purportedly a licensed producer and distributor of medical and recreational cannabis.

### Materially False and Misleading Statements Issued During the Class Period

17.    The Class Period begins on November 14, 2018.  On that day, the Company announced its third quarter 2018 financial results in a press release that stated, in relevant part:

> All amounts expressed are in Canadian dollars.
>
> Revenue for the three and nine month periods ended September 30, 2018 was $12,588,727 and $29,478,813 respectively, compared to $6,140,224 and $13,714,847 in the comparable 2017 periods. Net Income for the three and nine month periods ended September 30, 2018 was $421,240 and $11,968,255 respectively, compared to a net income of $655,309 and $632,269 in the comparable 2017 periods. Earnings per share for the three and nine month periods ended September 30, 2018 was $Nil and $0.12 respectively, compared to earnings per share of $0.01 and $0.01 in the comparable 2017 periods.
>
> **2018 Third Quarter Highlights**
>
> - Record revenues of $12.6M in Q3 2018, a 105% increase from the comparable prior year period
> - Operations for the quarter resulted in positive EBITDA and positive net income
> - Active patients increased to more than 50,000, a 61% increase from the comparable prior year period
> - Entered into supply agreements with 9 Canadian provinces to supply recreational cannabis across Canada

18.     On December 19, 2018, the Company provided a business update regarding the

Company's expansion plans in Pelham, Ontario.   In a press release, the Company stated, in

relevant part:

> In addition to its Phase II expansion, the Company has proceeded to build a
> 35,000 sq. ft. greenhouse facility adjacent to its current greenhouse. This facility
> is also fully-permitted.
>
> On October 15, 2018, the Town of Pelham's City Council passed an interim
> control bylaw allowing it to review land use planning policies and regulations
> pertaining to cannabis operations. The bylaw restricts use of land for cannabis
> purposes for one year, for land that does not already have a Development Permit.
>
> CannTrust made its permitting applications for the Phase III expansion prior to
> the enactment of the interim control bylaw which includes expansion onto the
> adjacent 19.4 acres it purchased. While CannTrust has not yet received all the
> permits necessary to proceed with the Phase III expansion, the Company is in
> active discussions with the municipality to obtain the necessary approvals and is
> currently assessing several other options to reach its capacity targets.
>
> "We initially applied for 10 permits relating to the development of our Phase III
> expansion. We're still working with the municipality to have all those permits
> approved," said Michael Camplin, General Manager of CannTrust's Niagara
> operations. "We respect the Town of Pelham's process. We have multiple
> strategic alternatives available to us and we hope Pelham is one of them."

19.     On March 28, 2019, the Company announced its fourth quarter and full year 2018

financial results in a press release that stated, in relevant part:

> "The CannTrust team has delivered remarkable growth in the fourth quarter of
> 2018. We achieved record sales volume, record revenue and our medical patient
> count continues to increase, reflecting the quality of our products and customer
> service," said Peter Aceto, Chief Executive Officer.
>
> "We expect the trajectory of revenue growth to continue in 2019 as we bring
> additional capacity online through our Phase 2 expansion, realize the potential of
> investments we have made into training and crop yield optimization, implement
> targeted price increases and distribute our products to more and more consumers.
> Additionally, CannTrust expects to take bold action to achieve leadership in
> growing cannabis outdoors. We have entered into Letters of Intent to secure
> approximately 200 acres of land, which we estimate will add an additional
> 100,000kg to 200,000kg of production in 2020, subject to regulatory approvals. In
> combination with our Phase 3 expansion, we estimate our annual production

capacity target to be between 200,000kg and 300,000kg. We also plan to become an early-mover in vaporization products and develop further partnerships to bring innovative products to market. These initiatives are the result of thoughtful and calculated work the Company has performed in assessing its growth strategy. This is truly a very exciting time for CannTrust," continued Mr. Aceto.

**Fourth Quarter 2018 Highlights**

- CannTrust reported record revenue of $16.2 million, a 132% increase from the fourth quarter of 2017.
- Active patient count increased to 58,000, up from 37,000 at the end of the prior year, an increase of 57%.
- The Company sold 3,407kg of dried cannabis equivalent, a 4.5x increase from 758kg in the fourth quarter of 2017.
- Cash costs per gram decreased to $2.94 from $5.16 in the fourth quarter of 2017.
- CannTrust was voted Top Licensed Producer of the year and received six other service and product awards at the 2018 Canadian Cannabis Awards.
- The Company closed the purchase of a 19.4 acre property on land adjacent to its Perpetual Harvest Facility in the Town of Pelham, which will be used to construct its Phase 3 expansion and bring total production capacity to 100,000kg per year upon its completion.

20.    On April 8, 2019, the Company announced that its greenhouse in Pelham, Ontario

is fully licensed.  In a press release, the Company stated, in relevant part:

CannTrust Holdings Inc. ("CannTrust" or the "Company", TSX: TRST, NYSE:CTST) is pleased to announce that its cultivation and processing permit under Health Canada Cannabis Regulations was amended to include the final 20% of its Phase 2 expansion. The entire 450,000 sq. ft. of its perpetual harvest greenhouse in Pelham, Ontario, is now fully licensed.

"We have always been confident that our processes meet and exceed regulatory standards, and we now have further validation of this from our regulators," said Peter Aceto, Chief Executive Officer. "With this approval, CannTrust is set to meet its plan to reach 50,000kg of annualized capacity at the perpetual harvest greenhouse and continue providing award-winning products in a cost-effective manner."

* * *

- The Company's Phase 3 expansion of its perpetual harvest greenhouse is expected to add a further 50,000kg of capacity beginning in the second half of 2020. Phase 3 includes productivity and automation enhancements over

7

Phases 1 and 2. Production from the Phase 3 expansion is also subject to Health Canada approval.

21.      On April 22, 2019, the Company announced preliminary financial results for first quarter 2019. In a press release, the Company stated, in relevant part:

"These preliminary results represent the excellent efforts the CannTrust team has made in increasing output at our Niagara perpetual harvest greenhouse. We are quickly approaching our stated capacity of 50,000kg per year from our Phase 2 expansion. Our 96% sequential increase in production over the prior quarter will enable us to service both our rapidly growing base of medical patients and the high demand in the recreational market for our award-winning products and brands." [*sic*] said Peter Aceto, Chief Executive Officer. "We expect gross margins between 42% to 46% in the first quarter of 2019, and plan to deliver continued improved profitability as our volumes increase, as we make targeted price increases and as we realize the benefits of our low-cost high quality production strategy."

**Operational Highlights**

Operational highlights for the quarter ended March 31, 2019 and subsequent period are as follows:

- The Company harvested approximately 9,424 kg of cannabis from its Niagara Facility, representing an increase of 96% from the fourth quarter of 2018.
- CannTrust made capital investments to enhance its extraction capability, tripling its annual capacity.
- In April 2019, CannTrust's cultivation and processing permit under Health Canada Cannabis Regulations was amended to include the final 20% of its Phase 2 expansion, which is now fully licensed. With the Phase 2 expansion, the Company expects full production to be achieved by the end of the second quarter of 2019 at an annualized rate of 50,000kg per year.

22.      On May 14, 2019, the Company announced its first quarter 2019 financial results in a press release that stated, in relevant part:

**First Quarter 2019 Highlights**

- Record quarterly revenue of $16.9 million, a 115% increase over the first quarter of 2018, 67% was through the medical channel and 33% through the recreational channel;
- Total active patient count reached 68,000 at March 31, 2019, a 70% increase over the first quarter of 2018;

- Harvested production increased by more than 400% to over 9,400kg, versus the first quarter of 2018, and 96% over the fourth quarter of 2018;
- Sold over 3,000kg of dried cannabis equivalent, a nearly 200% increase over the prior year, at an average net price of $5.47 per gram;
- Cost of sales per gram sold and cash cost per gram sold were $3.03 and $2.77, respectively, compared to $3.08 and $2.94, respectively, in the fourth quarter of 2018;
- Gross margin percentage before changes in the fair value of biological assets has improved to 46% compared to 35% in the fourth quarter of 2018;
- Acquired 81 acres of land in British Columbia for outdoor cultivation with a potential yield of 75,000kg of production in 2019, subject to regulatory approval;
- Obtained all necessary permits from the Town of Pelham for the construction of the 390,000 square foot Phase 3 expansion;

* * *

**Events Subsequent to the First Quarter of 2019**

- Successfully amended the Company's cultivation and processing permit under Health Canada Cannabis Regulations to include the final 20% of its Phase 2 expansion. The entire 450,000 sq. ft. of the Perpetual Harvest Facility in Pelham, Ontario, is now fully licensed and planted[.]

23.     The above statements identified in ¶¶ 17-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (1) the Company was growing cannabis in its Pelham greenhouse while applications for regulatory approval were still pending; (2 ) the Company's Pelham greenhouse did not comply with certain regulations; (3) as a result, the Company was reasonably likely to face an inventory hold by Health Canada until the Pelham facility becomes compliant with applicable regulations; (4) as a result, the Company's customers would face shortages and would likely seek product from CannTrust's competitors; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**The Truth Is Revealed**

24.     On July 8, 2019, the Company disclosed that its greenhouse facility in Pelham,

Ontario is non-compliant with certain regulations and that the Company was growing cannabis in

unlicensed rooms between October 2018 and March 2019.   In a press release, the Company

stated, in relevant part:

> CannTrust Holdings Inc. ("CannTrust" or the "Company", TSX: TRST, NYSE: CTST) has received a compliance report from Health Canada notifying the Company that its greenhouse facility in Pelham, Ontario is non-compliant with certain regulations. CannTrust has accepted Health Canada's non-compliance finding and has taken actions to ensure current and future compliance.
>
> ***The non-compliant rating is based on observations by the regulator regarding the growing of cannabis in five unlicensed rooms and inaccurate information provided to the regulator by CannTrust employees. Growing in unlicensed rooms took place from October 2018 to March 2019 during which time CannTrust had pending applications for these rooms with Health Canada.*** These rooms were constructed in accordance with regulations and Good Production Practices, and licenses were issued for each of the five rooms in April 2019. There are 12 rooms in total at the facility.
>
> ***Health Canada has placed a hold on inventory which includes approximately 5,200kg of dried cannabis that was harvested in the previously unlicensed rooms in Pelham, until it deems that the Company is compliant with regulations.*** In addition, CannTrust has instituted a voluntary hold of approximately 7,500kg of dried cannabis equivalent at its Vaughan manufacturing facility that was produced in the previously unlicensed rooms.
>
> CannTrust's operations at its Pelham and Vaughan facilities remain fully licensed and the Company continues to grow, cultivate, harvest and sell cannabis. Health Canada is conducting quality checks of product samples on hold at Pelham, with results expected in 10 to 12 business days. ***Due to the product on hold, some CannTrust customers and patients will experience temporary product shortages.*** The Company is exploring options to mitigate these shortages.
>
> All product sold from the impacted rooms has passed quality control testing at Health Canada certified labs as well as CannTrust's own quality control processes and safety reviews.
>
> "Our team has focused on building a culture of transparency, trust and excellence in every aspect of our business, including our interactions with the regulator. We have made many changes to make this right with Health Canada. We made errors

in judgement, but the lessons we have learned here will serve us well moving forward," said Peter Aceto, Chief Executive Officer.

(Emphasis added.)

25.    On this news, the Company's share price fell $1.11, or more than 22%, to close at $3.83 per share on July 8, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired CannTrust securities between November 14, 2018 and July 5, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CannTrust's common shares actively traded on the OTC and NYSE markets. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of CannTrust common stock were traded publicly during the Class Period on the OTC and NYSE markets. Record owners and other members of the Class may be identified from records maintained by CannTrust or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of CannTrust; and

c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

32.    The market for CannTrust's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or

failures to disclose, CannTrust's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired CannTrust's securities relying upon the integrity of the market price of the Company's securities and market information relating to CannTrust, and have been damaged thereby.

33.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of CannTrust's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about CannTrust's business, operations, and prospects as alleged herein.

34.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CannTrust's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.     During the Class Period, Plaintiff and the Class purchased CannTrust's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding CannTrust, their control over, and/or receipt and/or modification of CannTrust's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning CannTrust, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38.     The market for CannTrust's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures

to disclose, CannTrust's securities traded at artificially inflated prices during the Class Period. On March 27, 2019, the Company's share price closed at a Class Period high of $10.04 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of CannTrust's securities and market information relating to CannTrust, and have been damaged thereby.

39.    During the Class Period, the artificial inflation of CannTrust's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CannTrust's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of CannTrust and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40.    At all relevant times, the market for CannTrust's securities was an efficient market for the following reasons, among others:

a)    CannTrust shares met the requirements for listing, and was listed and actively traded on the OTC and NYSE markets, highly efficient and automated markets;

b)    As a regulated issuer, CannTrust filed periodic public reports with the SEC and/or the NYSE;

c)      CannTrust regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)      CannTrust was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for CannTrust's securities promptly digested current information regarding CannTrust from all publicly available sources and reflected such information in CannTrust's share price.  Under these circumstances, all purchasers of CannTrust's securities during the Class Period suffered similar injury through their purchase of CannTrust's securities at artificially inflated prices and a presumption of reliance applies.

42.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment

decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CannTrust who knew that the statement was false when made.

## FIRST CLAIM
### Violations of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged

herein; and (ii) cause Plaintiff and other members of the Class to purchase CannTrust's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

46.    The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for CannTrust's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about CannTrust's financial well-being and prospects, as specified herein.

48.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CannTrust's value and performance and continued substantial growth, which included the making of, or the participation in the making of , untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about CannTrust and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts:    (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.    The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CannTrust's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-

being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of CannTrust's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the markets in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired CannTrust's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that CannTrust was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CannTrust securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.    By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    The Individual Defendants acted as controlling persons of CannTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or in directly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to

control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, CannTrust and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 31, 2019                    Respectfully submitted,

                                        **POMERANTZ LLP**

                                        */s/ Jeremy A. Lieberman*
                                        Jeremy A. Lieberman

J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2019-07-10 10:46:33

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against CannTrust Holdings Inc. ("CannTrust" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire CannTrust securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired CannTrust securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in CannTrust securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Scott Justiss

**Signature**

**Full Name**

**CannTrust Holdings Inc. (CTST)**                                              **Justiss, Scott**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 5/23/2019 | Purchase | 1 | $5.6800 |
| 5/23/2019 | Purchase | 169 | $5.8800 |
| 5/29/2019 | Purchase | 36 | $5.7500 |
| 6/4/2019 | Purchase | 15 | $5.2500 |
| 6/5/2019 | Purchase | 1 | $5.4400 |
| 6/14/2019 | Purchase | 1 | $5.0000 |
| 5/28/2019 | Sale | 2 | $5.9000 |
| 5/28/2019 | Sale | 30 | $5.9000 |
| 5/28/2019 | Sale | 1 | $5.9000 |
| 5/28/2019 | Sale | 2 | $5.9000 |